BUILDING AND CONSTRUCTION TRADES COUNCIL OF BUFFALO, NEW YORK AND VICINITY, Plaintiff–Appellant,

v.

DOWNTOWN DEVELOPMENT, INC., Erie County Industrial Development Agency, and Krog Corporation, Defendants–Appellees,

City of Buffalo, New York, Defendant.

No. 04–4865–CV.

United States Court of Appeals, Second Circuit.

Argued: Nov. 28, 2005.

Final Submission: April 19, 2006.

Decided: May 5, 2006.

David J. Seeger, Buffalo, NY, for Plaintiff–Appellant.

Craig A. Slater, Harter, Secrest & Emery LLP, Buffalo, NY, for Defendant–Appellee Downtown Development, Inc.

Joseph D. Picciotti, Harris Beach LLP, (Laura W. Smalley, of counsel), Pittsford, NY, for Defendant–Appellee Krog Corporation.

Andrea Schillaci, Hurwitz & Fine, P.C., Buffalo, NY, for Defendant–Appellee Erie County Industrial Development Agency.

Before: McLAUGHLIN and SACK, Circuit Judges, and KOELTL, District Judge.[*]

SACK, Circuit Judge.

This appeal primarily concerns standing under Article III of the Constitution and interpretation of the pre-suit requirements of the Resource Conservation and Recovery Act.

The plaintiff-appellant Building and Construction Trades Council of Buffalo, New York and Vicinity (the "Trades Council") appeals from a judgment of the United States District Court for the Western District of New York (John T. Elfvin, *Judge*) dismissing all claims against the defendants-appellees for lack of standing. The Trades Council, a labor organization affiliated with the AFL–CIO, brought suit against various defendants alleging violations of the Resource Conservation and Recovery Act and the Clean Water Act, based on activities the defendants allegedly undertook in connection with the redevelopment of a 113–acre parcel of land adjacent to the Union Ship Canal in western New York State.

The defendants moved to dismiss all claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court decided that the Trades Council had failed to establish its standing, under Article III of the Constitution, to bring the suit in federal court, because it did not allege sufficient injury in fact on behalf of its members, and because the interests at stake in the litigation were not germane to the Trades Council's organizational purpose. The district court also concluded that, in any event, the Trades Council lacked standing to assert its Clean Water Act claim because the alleged violation upon which the claim was premised had been rectified by the time the Trades Council filed its amended complaint. The court therefore dismissed all of the Trades Council's claims and entered judgment for the defendants.

We conclude that the Trades Council sufficiently alleged the requirements of Article III standing, but we also conclude that the Trades Council failed to comply with certain pre-suit notice provisions of the Resource Conservation and Recovery Act and the Clean Water Act. We therefore vacate the district court's judgment and remand to the district court with instructions to dismiss the complaint without prejudice.

## BACKGROUND

The "Hanna Furnace site" is a 113–acre "brownfield"[1] surrounding a portion of the Union Ship Canal in western New York State. Starting in 1998, the City of Buffalo sought to redevelop the site for mixed use, including light industry and public recreation. During the time period rele-

---

[*] The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

1. "[T]he term 'brownfield site' means real property, the expansion, redevelopment, or reuse of which may be complicated by the presence or potential presence of a hazardous substance, pollutant, or contaminant." http://www.epa. gov/brownfields/ glossary.htm (last visited, May 4, 2006).

vant to this appeal, there was one significant construction project underway at the Hanna Furnace site—a project undertaken by The Krog Corporation, a general contractor and construction management firm, for use by the CertainTeed Corporation. Development of this area, known as "the CertainTeed site," allegedly entailed, among other things, the excavation, removal, and redepositing of soils contaminated by lead, mercury, arsenic, and other toxic substances.

### Proceedings in the District Court

On April 23, 2004, the Trades Council, a professional labor organization affiliated with the AFL–CIO, brought suit in the United States District Court for the Western District of New York against Downtown Development, Inc. ("DDI"), Erie County Industrial Development Agency ("ECIDA"), The Krog Corporation, and the City of Buffalo, invoking the court's federal question jurisdiction. In its complaint, the Trades Council asserted three causes of action arising out of alleged activities at the Hanna Furnace site: (1) a violation of the Resource Conservation and Recovery Act ("RCRA") brought under 42 U.S.C. § 6972(a)(1)(B), premised on the alleged disposal of solid and hazardous waste contaminating groundwater, surface waters, soil, residences, and air;(2) a violation of RCRA, 42 U.S.C. § 6945, based on the alleged open dumping of solid waste into waters of the United States; and (3) a violation of the Clean Water Act, 33 U.S.C. §§ 1311 & 1342, premised on the alleged discharge of polluted water without a permit.

In May 2004, the defendants moved to dismiss all the plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing, inter alia, that the Trades Council lacked standing to bring the suit in federal court under Article III of the Constitution.

On July 2, 2004, the Trades Council filed an amended complaint that asserted the same three causes of action and added further allegations relevant to the standing issue. The Trades Council alleged, inter alia, that some of its members had worked at the CertainTeed site, and had been exposed to contaminated soil and waste materials while working there. The Trades Council also alleged that: (1) many of its members reside and work near the Hanna Furnace site; (2) many of its members drink water from public water supplies drawn from Lake Erie that are being polluted by water migrating through the Hanna Furnace Site; and (3) many of its members use Lake Erie and the area surrounding the Hanna Furnace Site for recreation and enjoy the aesthetic value of the area.

On July 23, 2004, after the City of Buffalo was dismissed as a defendant with the consent of the Trades Council, and after further briefing, the district court, in a brief order, stated that the defendants' motions to dismiss were moot. *Bldg. & Constr. Trades Council of Buffalo, N.Y. & Vicinity v. Downtown Dev., Inc.*, No. 04–CV–0318E(F), slip op. at 1 (W.D.N.Y. July 23, 2004). The court then concluded that the Trades Council's amended complaint failed to allege facts which, if proven, would establish standing for the plaintiff to bring the lawsuit in federal court under Article III of the Constitution. *See id.* at 3–4. The court reasoned that the Trades Council had failed to allege sufficient injury in fact on behalf of individual members for standing purposes and that the interests at stake in the litigation were not germane to the Trades Council's purposes as an organization. *See id.* The district court also ruled that, in any event, the Trades Council lacked standing to bring its Clean Water Act claim because the alleged violation upon which the claim was based

had been rectified by the time the Trades Council filed its amended complaint. *Id.* at 4.

The Trades Council appeals.

## DISCUSSION

### I. Standard of Review

■ "Because 'standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Connecticut v. Physicians Health Servs. of Conn., Inc.,* 287 F.3d 110, 114 (2d Cir.) (quoting *United States v. Vazquez,* 145 F.3d 74, 81 (2d Cir.1998)), *cert. denied,* 537 U.S. 878, 123 S.Ct. 77, 154 L.Ed.2d 133 (2002). On appeal from a judgment entered pursuant to Federal Rule of Civil Procedure 12(b)(1), we review conclusions of law de novo. *See Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).

### II. Associational Standing

■ The Trades Council has standing as an association to bring suit in its own name on behalf of its members if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Com'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *see also N.Y. Pub. Interest Research Group v. Whitman,* 321 F.3d 316, 325 (2d Cir.2003).

### A. Individual Standing of Trades Council Members

■ The first requirement for associational standing, then, is that the members "have standing to sue in their own right." To establish individual standing, a plaintiff

must show that: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); *see also N.Y. Pub. Interest Research Group,* 321 F.3d at 325. The defendants do not dispute that the amended complaint adequately alleges "traceability" and "redressability." They argue only that the Trades Council has not sufficiently alleged "injury in fact" on behalf of some or all of its members.

*1. Failure of the Complaint To Set Forth Names of Injured Members.* As an initial matter, the defendants contend, and the district court agreed, that with respect to the need for an allegation of "concrete and particularized" injury, the Trades Council's amended complaint is deficient because it fails to state the names of the members of the Trades Council who have allegedly been harmed by the defendants' actions. The defendants note that we have said that "[a] 'particularized' injury is one that 'affect[s] the plaintiff in a personal and individual way.'" *LaFleur v. Whitman,* 300 F.3d 256, 269 (2d Cir.2002) (quoting *Defenders of Wildlife,* 504 U.S. at 560 n. 1, 112 S.Ct. 2130). They argue that the amended complaint cannot be said to allege such a "personal and individual" injury because it does not contain the names of those who have been particularly injured.

■ The defendants' argument that the persons allegedly injured must be identi-

fied by name might have some validity if this litigation were at the summary judgment stage. Discovery on the issue would therefore be substantially complete, and the evidentiary adequacy of the Trades Council's standing allegations could be tested. *Cf. Sierra Club v. SCM Corp.*, 747 F.2d 99, 103, 107–08 (2d Cir.1984) (affirming dismissal of complaint after plaintiff organization refused to answer interrogatories with respect to individual standing, indicating to the district court "that it did not intend to identify any of its members who might have been harmed by the alleged violation" and "would refuse to provide such information"). But the Trades Council's contention is unpersuasive on a motion to dismiss, where standing is challenged based on the pleadings alone. As the Supreme Court has made clear, each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. 2130. There is no heightened pleading requirement for allegations of standing. *See Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 107–08 (2d Cir.2005), *petition for cert. filed*, 74 U.S.L.W. 3517 (Mar. 06, 2006) (No. 05–1126). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Defenders of Wildlife*, 504 U.S. at

561, 112 S.Ct. 2130 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)) (alteration in original); *see also Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 115, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) ("The adequacy of proof of respondents' standing is not before us, and we express no views on it."); *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 361 (2d Cir.2003) ("To the degree that defendants challenge the factual underpinnings of the allegations made by plaintiffs in support of their standing to bring suit, the argument is premature.").

An association bringing suit on behalf of its members must allege that one or more of its members has suffered a concrete and particularized injury, *see SCM Corp.*, 747 F.2d at 107 n. 3, as the plaintiffs do, *see, e.g.*, Am. Compl. ¶¶ 16–17, 32. But the defendants cite to no authority—nor are we aware of any—that supports the proposition that an association must "name names" in a complaint in order properly to allege injury in fact to its members.[2]

■ *2. Allegedly Speculative Allegations of Injury.* As for the second requirement for there to be individual standing of the Trades Council's members—that the alleged injury to the individuals be "actual or imminent, not conjectural or hypothetical"—the defendants argue, and the district court concluded, that the injuries alleged on behalf of the Trades Council's members are entirely speculative. In making this argument, the defendants fo-

---

2. The defendants rely on one district court decision, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany*, 250 F.Supp.2d 48, 56 (N.D.N.Y.2003), to support their position. The decision is, of course, not binding on us, but it is in any event not helpful to the defendants. In the same section of its opinion in which the *Arbor Hill* court noted that no specific individuals had

been named in the complaint before it, the court suggested that the fatal shortcoming in the plaintiff's complaint was in fact its failure to allege that any of the plaintiff's members had personally suffered injury. The district court explained that the complaint alleged only the general harm caused by exposure to lead. *See id.* at 56–57.

cus on conjectural language in the amended complaint, such as that members of the Trades Council "will be employed" at the Hanna Furnace site in the future, "will visit and use" certain portions of the finished project, and "will be exposed to contamination." Am. Compl. ¶¶ 24–26. The district court, too, relied on such allegations in concluding that the Trades Council did not have standing. *See Bldg. & Const. Trades Council,* slip op. at 3–4.

But to whatever extent future-oriented allegations such as these might fall short of properly alleging injury in fact—an issue we need not decide here—the defendants' argument and the district court's brief order are mistaken because the question is not whether *any* of the allegations of injury are speculative, but whether *all* of them are, therefore requiring the complaint's dismissal. As noted earlier, the amended complaint asserts, *inter alia,* that members of the Trades Council had been employed at the CertainTeed site and had been exposed to contaminated soil and waste materials while working there. Am. Compl. ¶¶ 16–17. An allegation of "[a]ctual exposure to increased levels of [pollutants] at one's workplace" qualifies as an allegation of injury in fact. *See LaFleur,* 300 F.3d at 270–71. The Trades Council also alleges that many of its members drink water from public water supplies drawn from Lake Erie that are being polluted by water migrating through the Hanna Furnace Site. Am. Compl. ¶ 32. That is sufficiently concrete inasmuch as an allegation of injury in fact is generally adequately pleaded when an "association asserts that the challenged actions resulted in injury by exposing its members to increased pollutants." *N.Y. Pub. Interest Research Group,* 321 F.3d at 325.

The Trades Council also alleges that many of its members reside and work near the Hanna Furnace site, and that many also use Lake Erie and the area surrounding the Hanna Furnace Site for recreation and enjoy the aesthetic value of the area. Am. Compl. ¶¶ 31, 33–36. The Supreme Court has said that "environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Laidlaw Envtl. Servs.,* 528 U.S. at 183, 120 S.Ct. 693 (quoting *Sierra Club v. Morton,* 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)); *see also Friends of the Earth v. Consol. Rail Corp.,* 768 F.2d 57, 61 (2d Cir.1985).

These allegations, whatever may be said of their ultimate merits, are plainly not speculative. None of them were alluded to by the district court. We conclude that the Trades Council adequately alleged actual or imminent injury.

Because we conclude that the Trades Council has successfully pleaded "injury in fact," and because the defendants do not challenge the adequacy of the pleadings with respect to the other requirements for individual standing, we also conclude that the Trades Council adequately alleged that its members would have standing to sue in their own right.

The inquiry into whether individual members of an association would have standing to sue in their own right is quite distinct from the inquiry into whether the interests the association seeks to protect through a suit brought in its name are germane to the organization's purpose, however, the issue we discuss next.

B. *"Germane to The Organization's Purpose."*

■ The second requirement for "associational standing" enabling the Trades Council to bring this lawsuit in its own name on behalf of its members is that "the

interests it seeks to protect are germane to the organization's purpose." *Hunt,* 432 U.S. at 343, 97 S.Ct. 2434. The defendants argue that the Trades Council's lawsuit does not meet this requirement because, as a labor organization, the Council was not established for the purpose of enforcing environmental laws. The district court agreed that the "germaneness" prong of *Hunt* was not met, noting that "several allegations in the [a]mended [c]omplaint . . . deal[ ] with members' non-occupational interests." *Bldg. & Const. Trades Council,* slip op. at 4.

We apparently have not previously spoken at any length about the "germaneness" requirement of *Hunt,* nor has the Supreme Court, to the best of our knowledge, explained in any detail its scope. In *Humane Society of the United States v. Hodel,* 840 F.2d 45 (D.C.Cir.1988), however, the District of Columbia Circuit, in an opinion by then-Chief-Judge Wald, gave some direction to the "germaneness" inquiry.

In *Hodel,* the United States Fish and Wildlife Service contested the standing of an animal welfare organization to challenge actions permitting hunting on specific national wildlife refuges. *Id.* at 47. Finding that the group satisfied the germaneness requirement of *Hunt,* the District of Columbia Circuit reasoned that "[t]oo restrictive a reading of the requirement would undercut the interest of members who join an organization in order to effectuate 'an effective vehicle for vindicating interests that they share with others.'" *Id.* at 56 (quoting *Int'l Union, UAW v. Brock,* 477 U.S. 274, 290, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986)).

The *Hodel* court took particular guidance from *UAW,* in which the Supreme Court reaffirmed the approach of *Hunt,* rejecting an argument that it formulate a stricter framework for associational stand-

ing. *UAW,* 477 U.S. at 290, 106 S.Ct. 2523. In so doing, the *UAW* Court explained that there are "special features, advantageous both to the individuals represented and to the judicial system as a whole, that distinguish suits by associations on behalf of their members from class actions." *Id.* at 289, 106 S.Ct. 2523. These special features include: (1) the ability of "an association suing to vindicate the interests of its members [to] draw upon a pre-existing reservoir of expertise and capital," and (2) the fact "that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Id.* at 289–90, 106 S.Ct. 2523. The *UAW* Court also noted that "[t]he very forces that cause individuals to band together in an association will . . . provide some guarantee that the association will work to promote their interests." *Id.* at 290, 106 S.Ct. 2523.

Looking to *UAW,* the *Hodel* court noted "the importance of a reading of the germaneness requirement that does not unduly confine the occasions on which associations may bring legal actions on behalf of members." *Hodel,* 840 F.2d at 55–56. The *Hodel* court also observed:

> If the "forces that cause individuals to band together" guarantee some degree of fair representation, they surely guarantee as well that associational policymakers will not run roughshod over the strongly held views of association members in fashioning litigation goals. Thus, in its rationale, *UAW* suggests that it is highly unlikely the second prong of germaneness was meant to set [a] narrow perimeter of centrality of purpose . . . .

*Id.* at 56 (quoting *UAW,* 477 U.S. at 290, 106 S.Ct. 2523) (footnote omitted). The District of Columbia Circuit also drew support for a "modest . . . interpretation of

the germaneness requirement," *Hodel*, 840 F.2d at 56, from the "very brevity of the [Supreme] Court's treatment of the germaneness inquiry in *UAW*" itself, *id.* at 56 n. 17. The *UAW* Court did no more than "pause only briefly to consider whether the second of *Hunt*'s preconditions for associational standing has been satisfied." *UAW*, 477 U.S. at 286, 106 S.Ct. 2523.[3]

The *Hodel* court concluded that the "germaneness" requirement of *Hunt*, as seen through the lens of the language of *UAW*, "would seem to require only that an organization's litigation goals be pertinent to its special expertise and the grounds that bring its membership together." *Hodel*, 840 F.2d at 56; *accord Nat'l Lime Ass'n v. Envtl. Prot. Agency*, 233 F.3d 625, 636–37 (D.C.Cir.2000). In sum, the "requirement of germaneness is 'undemanding'; 'mere pertinence between litigation subject and organizational purpose' is sufficient." *Nat'l Lime Ass'n*, 233 F.2d at 636 (quoting *Hodel*, 840 F.2d at 58).

The Ninth Circuit, in *Presidio Golf Club v. National Park Service*, 155 F.3d 1153 (9th Cir.1998), drew a similar conclusion about the "germaneness" inquiry. Citing *Hodel*, it observed that "courts have generally found the germaneness test to be undemanding," and rejected the Park Service's contention that a private golf club— in a suit challenging a plan to build a new public clubhouse near their older private clubhouse—could not assert environmental and historic preservation claims on behalf of its members because the stated purposes of the club did not include environmental or historical objectives. *Id.* at 1159. The court noted "the organization's goals of maintaining the Clubhouse for the members' use in a manner suitable for the social and athletic activities surrounding the game of golf ... [and] the Club's [related] interest in maintaining the historical and environmental integrity of the Clubhouse." *Id.*[4]

At least in the context of the case before us, we find the reasoning of the District of Columbia Circuit in *Hodel* to be persuasive. We think it significant that the *Hunt* Court used the word "germane," rather than the phrase "at the core of," or "central to," or some word or phrase indicating the need for a closer nexus between the interests sought to be protected by the suit in question and the organization's dominant purpose. We also think that the defendants' argument here—that the Trades Council was not established *for the purpose* of enforcing environmental laws and therefore cannot bring suit under those laws—is inconsistent with the recognition by the Supreme Court "that the primary reason people join an organization is often to create an effective vehicle for vindicating *interests* that they share with

---

3. *Cf. UAW*, 477 U.S. at 296–97, 106 S.Ct. 2523 (Powell, J., dissenting) (arguing that the Court should reject "formalistic" germaneness, and inquire, *inter alia*, whether "[t]he number of members in the organization with a concrete stake in the outcome, ... may be so small that th[e] theoretical identity [of interest between organization and membership] disappears," and whether "a union may have reasons for instituting a suit—such as the publicity that attends a major case—other than to assert rights of its members").

4. The First Circuit, in *Town of Norwood, Mass. v. Federal Energy Regulatory Commis-* *sion*, 202 F.3d 392, 407 (1st Cir.), *cert. denied*, 531 U.S. 818, 121 S.Ct. 57, 148 L.Ed.2d 24 (2000), by comparison, concluded that a nonprofit corporation, dedicated to public education about environmental changes related to technology and energy use, lacked standing to pursue a claim based on the alleged injury caused to its members by a decline in property taxes because the germaneness requirement was not met. It is difficult to discern any relationship between the organization's purpose and the subject matter of the suit in that case.

others." *UAW,* 477 U.S. at 290, 106 S.Ct. 2523 (emphasis added). Over time, an association may use diverse legal avenues to pursue the various interests that bring its membership together.

We conclude that the "germaneness" requirement of *Hunt* should be read in accordance with the "modest yet important" goal "of preventing litigious organizations from forcing the federal courts to resolve numerous issues as to which the organizations themselves enjoy little expertise and about which few of their members demonstrably care." *Hodel,* 840 F.2d at 57. The proper inquiry at the pleading stage is thus a limited one: A court must determine whether an association's lawsuit would, if successful, reasonably tend to further the general interests that individual members sought to vindicate in joining the association and whether the lawsuit bears a reasonable connection to the association's knowledge and experience. *See id.* at 56.

Applying this standard to the case before us,[5] we begin with the defendants' acknowledgment that the Trades Council's "primary focus ... is to protect the rights and benefits" of its members. DDI Br. at 21. The Trades Council's purpose, as alleged in its complaint, is, *inter alia,* to improve "working conditions" and "the occupational safety and health of its members." Am. Compl. ¶¶ 22–23.

 If the Trades Council were to prevail on its first cause of action—based on the alleged disposal of solid and hazardous waste at the CertainTeed site—the result, potentially including an injunction that the site be cleaned up, and civil penalties and attorney's fees, might well be an improvement in workplace safety. We conclude that the Trades Council's first cause of action is germane to an interest that members of the Trades Council seek to vindicate in coming together as an association.[6] *Cf. McKinney v. U.S. Dep't of the Treasury,* 799 F.2d 1544, 1553 (Fed.Cir.1986) (concluding that a self-described "nonprofit public interest law firm" lacked associational standing to sue the Customs Service in order to bar the importation of Soviet goods, because, *inter alia,* "[t]he amended complaint does not indicate that a purpose of the [organization] is to protect the economic interests of producers and workers").

"Construing the complaint in [the] plaintiff[']s[ ] favor," *Fair Hous. in Huntington,* 316 F.3d at 364, as we must at this stage of litigation, we also conclude that the first cause of action bears a reasonable connection to the knowledge and experience of the Trades Council, which is alleged to represent over twelve thousand workers who perform a range of construction tasks. Am. Compl. ¶ 9.

 It is substantially more difficult to determine whether the interests sought to be protected by the second and third

---

**5.** The district court appeared to begin and end its inquiry by asking whether any of the interests sought to be protected by the present suit were *not* germane to the Trades Council's purposes. *See Bldg. & Const. Trades Council,* slip op. at 4. We think the proper inquiry is whether any of the material interests *are* germane.

**6.** Our conclusion would be unchanged even if it were shown that, as the defendants contend, the present suit "was brought ... to

leverage greater union involvement in any construction projects at the Hanna Furnace Site, interests wholly unrelated to the environmental claims made here." DDI Br. at 3. Federal Rule of Civil Procedure 11(b) must be followed, but standing is not measured by divining the mix of a party's motivations for bringing suit, and would not be defeated by showing that, absent interests unrelated to the subject matter of the action, it would not have been filed. *See supra* note 5.

causes of action—a violation of the Resource Conservation and Recovery Act premised on the open dumping of solid waste into waters of the United States, and a violation of the Clean Water Act premised on the discharge of polluted water without a permit, respectively—are similarly germane to the purposes of the Trades Council, which include "the *occupational* safety and health" of its members. Am. Compl. ¶ 23 (emphasis added). It is unclear from the short, technical-sounding allegations of the amended complaint alone whether successful litigation of these causes of action would advance occupational health and safety, or instead would only advance the overall health and safety of Trades Council members as local residents who depend on Lake Erie for drinking water or for recreation. Ultimately, however, because the second and third causes of action are based on activities that appear, under the facts as alleged, to have occurred at the CertainTeed site—where members of the Trades Council allegedly worked and were exposed to pollutants—we conclude that under the facts as alleged, the interests sought to be protected through these causes of action are also germane to the purposes of the Trades Council within the meaning of *Hunt.*[7]

### C. *Whether Individual Participation in The Suit Is Required*

 The third prong of the *Hunt* test for associational standing requires that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt,* 432 U.S. at 343, 97 S.Ct. 2434. The defendants contend that the claims asserted by the Trades Council require such partic-

ipation. The district court did not address this argument. We conclude that it is without merit.

Noting that the third prong of *Hunt* concerns claims that would require "individualized proof," such as claims for damages, we have stated that "where the organization seeks a purely legal ruling without requesting that the federal court award individualized relief to its members, the *Hunt* test may be satisfied." *Bano v. Union Carbide Corp.,* 361 F.3d 696, 714 (2d Cir.2004); *see also Hunt,* 432 U.S. at 344, 97 S.Ct. 2434 ("[N]either the interstate commerce claim nor the request for declaratory and injunctive relief requires individualized proof and both are thus properly resolved in a group context."). Here, because the Trades Council seeks civil penalties and injunctive relief only, not money damages, its claims do not require "individualized proof." The third prong of the *Hunt* test for associational standing is therefore also clearly satisfied.

### III. Standing Under The Clean Water Act

 The district court also concluded that the Trades Council lacked standing to assert its Clean Water Act claim because, when the amended complaint was filed on July 2, 2004, the alleged violation of the Act had already been rectified. *Bldg. & Const. Trades Council,* slip op. at 4. Although this ruling required the district court to look outside the pleadings, a court has discretion to do so when determining whether it has subject matter jurisdiction. *See Luckett v. Bure,* 290 F.3d 493, 496–97 (2d Cir.2002). Our review of the

---

**7.** Our conclusion that under the facts as alleged the interests sought to be protected through the second and third causes of action are germane to the purposes of the Trades Council does not preclude this issue from being pursued further on remand, including through a motion for summary judgment, where, as noted, the evidentiary adequacy of the Trades Council's standing allegations may be tested. *Cf. SCM Corp.,* 747 F.2d at 107–08.

record convinces us, however, that the district court's conclusion was in error.

The Trades Council's initial complaint was filed on April 23, 2004. The third cause of action alleged in the initial complaint asserted a violation of the Clean Water Act, 33 U.S.C. §§ 1311 & 1342, premised on the discharge of polluted water without a permit. The amended complaint, filed on July 2, 2004, repeated this cause of action without material alteration. According to an affidavit executed by DDI's project manager at the CertainTeed site, and an attached exhibit, both of which were apparently credited by the district court, Krog filed the relevant permit with the New York State Department of Environmental Conservation on May 18, 2004.

According to the district court, because at the time the amended complaint was filed (July 2), the pertinent permit had already been filed (May 18), the Trades Council lacked standing under the Clean Water Act because the alleged violation had already been rectified—the defendants had a permit. *Bldg. & Const. Trades Council*, slip op. at 4. Although the Supreme Court has "held that citizens lack statutory standing under [the Clean Water Act] to sue for violations that have ceased by the time the complaint is filed," *Laidlaw Envtl. Servs.*, 528 U.S. at 175, 120 S.Ct. 693 (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56–63, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987)), the district court erred in dismissing the amended complaint on this ground because the alleged violation had not ceased before the *initial* complaint was filed.

■ Federal Rule of Civil Procedure 15(c) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. Pro. 15(c)(2). Because "[t]he critical time for determining whether there is an ongoing violation is when the complaint is filed," *Conn. Coastal Fishermen's Ass'n v. Remington Arms Co.*, 989 F.2d 1305, 1311 (2d Cir.1993), and here the relevant claim was filed before the violation was allegedly rectified, the district court erred in concluding that the Trades Council lacked standing under the Clean Water Act.

IV. Mootness of the Clean Water Act Claim

■ On appeal, the defendants argue that irrespective of whether the Trades Council initially had standing to assert its Clean Water Act claim, because the defendants have by now acquired the necessary permit, the Trades Council's Clean Water Act claim has become moot.

The Supreme Court has said:

The standard ... for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Laidlaw Envtl. Servs.*, 528 U.S. at 189, 120 S.Ct. 693 (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)).

The amended complaint alleges that the defendants failed to obtain a permit for discharges "associated with construction activity on the Hanna Furnace/Union Ship Canal site." Am. Compl. ¶ 76. We con-

clude that, at least for now, the defendants have failed to meet their "heavy burden" of making "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw Envtl. Servs.*, 528 U.S. at 189, 120 S.Ct. 693 (quoting *Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 203, 89 S.Ct. 361) (internal quotation marks omitted). The defendants ultimately may be correct that Krog's alleged acquisition of the permit rendered moot assertions of violations premised on discharges without a permit. We cannot say, based on the current record, however, that it is "absolutely clear" that the cause of action asserted as to alleged violations is moot, because it is unclear whether the permit allegedly obtained by Krog covers the entire Certain-Teed site or even all those areas where the alleged violations had been occurring. Indeed, the defendants do not, at least explicitly, contend that to be the case. We cannot affirm this part of the district court's decision on mootness grounds.

■ Moreover, even if it had been established that acquisition of a permit mooted the Trades Council's Clean Water Act claim, dismissal of the cause of action would not follow because the claim for civil penalties would still remain. "As the [United States] Courts of Appeals . . . have uniformly concluded, a polluter's voluntary postcomplaint cessation of an alleged violation will not moot a citizen-suit claim for civil penalties even if it is sufficient to moot a related claim for injunctive or declaratory relief." *Laidlaw Envtl. Servs.*, 528 U.S. at 196, 120 S.Ct. 693 (Stevens, J., concurring); *see also Atl. States Legal Found. v. Pan Am. Tanning Corp.*, 993 F.2d 1017, 1021 (2d Cir.1993) ("We hold . . . that a defendant's ability to show,

after suit is filed but before judgment is entered, that it has come into compliance with limits on the discharge of pollutants will not render a citizen suit for civil penalties moot. Civil penalties may still be imposed for post-complaint violations and for violations that were ongoing at the time suit was filed.").

## V. Statutory Notice Requirements

■ Defendant Krog, joined by defendant ECIDA, argues that the district court properly dismissed the Trades Council's amended complaint in its entirety because the Trades Council failed to comply with the statutory notice requirements of the Clean Water Act and RCRA.[8]

### A. *The Statutory Scheme*

Section 6972(a) of RCRA provides in pertinent part:

> Except as [otherwise provided,] any person may commence a civil action on his own behalf—(1)(A) against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or (B) against any person . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . .

42 U.S.C. § 6972(a).

But section 6972(b)(2)(A) of RCRA states in pertinent part:

---

8. Defendant DDI joins in much of this argument in a supplemental letter-brief filed with the Court.

No action may be commenced under subsection

(a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to—

(i) the Administrator;

(ii) the State in which the alleged endangerment may occur;

(iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section, *except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter.*

42 U.S.C. § 6972(b)(2)(A) (emphasis added).

Section 6972(b)(1)(A) of RCRA is similar to section 6972(b)(2)(A), just quoted, but applies to actions brought under subsection A of section 6972(a)(1), and provides for a 60–day delay period instead of a 90–day delay period. *See* 42 U.S.C. § 6972(b)(1).[9] "[S]ubchapter III," referred to in both pertinent sections of RCRA, is entitled "Hazardous Waste Management." *See* United States Code, Table of Contents, Title 42, Chapter 82, Subchapter III, 42 U.S.C. §§ 6921–6939e.

Section 1365(b) of the Clean Water Act, which applies to actions brought under its citizen suit provision, is similar to section 6972(b)(1) of RCRA. *See* 33 U.S.C. § 1365(b).[10]

The Supreme Court has suggested that notice and delay requirements such as these were designed by Congress "to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits." *Hallstrom v. Tillamook County,* 493 U.S. 20, 29, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989).

**9.** It provides in pertinent part:
(b) Actions prohibited.
(1) No action may be commenced under subsection (a)(1)(A) of this section—
(A) prior to 60 days after the plaintiff has given notice of the violation to—
(i) the Administrator;
(ii) the State in which the alleged violation occurs; and
(iii) to any alleged violator of such permit, standard, regulation, condition, requirement, prohibition, or order,
except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter [42 U.S.C. §§ 6921 *et seq.*] ....
42 U.S.C. § 6972(b)(1).

**10.** It reads:
(b) Notice. No action may be commenced—
(1) under subsection (a)(1) of this section—
(A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or
(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.
(2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator,
except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of sections 306 and 307(a) of this Act [33 USCS §§ 1316, 1317(a)]. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.
33 U.S.C. § 1365(b).

Requiring citizens to comply with the notice and delay requirements serves this congressional goal in two ways. First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits.... Second, notice gives the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." *Gwaltney,* [484 U.S.] at 60, 108 S.Ct at 382. This policy would be frustrated if citizens could immediately bring suit without involving federal or state enforcement agencies.

*Id.*

### B. *The Defendants' Arguments*

The Trades Council's amended complaint alleges that a notice of violations and intent to sue was given to the relevant parties on April 16, 2004. The initial complaint was filed only one week later, on April 23, 2004, which would seem to violate the notice period requirement of both RCRA and the Clean Water Act.

In *Dague v. City of Burlington,* 935 F.2d 1343, 1352 (2d Cir.1991), *rev'd in part on other grounds,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), we concluded, however, that if a plaintiff files a complaint alleging a RCRA subchapter III violation, which frees a plaintiff from the otherwise applicable statutory delay periods, *see* 42 U.S.C. § 6972(b)(1)(A) & (b)(2)(A), and if the complaint also alleges other "closely related" violations, then such a complaint should be considered a "hybrid" complaint, permitting the plaintiff to proceed with the non-subchapter III claims without waiting for the expiration of the notification period. *Accord Covington v. Jefferson County,* 358 F.3d 626, 637 (9th Cir.2004); *AM Int'l, Inc. v. Datacard Corp.,* 106 F.3d 1342, 1351 (7th Cir.1997).

The defendants do not dispute the vitality of *Dague.* They argue instead that the Trades Council has not properly alleged a claim respecting a violation of subchapter III of RCRA. Therefore, they argue, the exception for complaints brought under subchapter III does not apply to this complaint and the complaint was filed prematurely. Defendants Krog and ECIDA also contend that the *content* of the notice provided was insufficient.

*1. Whether the Trades Council's Amended Complaint is a "Hybrid."* The Trades Council alleges in its amended complaint that its first cause of action—based on the alleged disposal of solid and hazardous waste at the CertainTeed site—was brought pursuant to what it calls the "'imminent hazard' provision" of RCRA, 42 U.S.C. § 6972(a)(1)(B), which provides, as noted, a private right of action against any party "who has contributed or who is contributing to ... an imminent and substantial endangerment to health or the environment." *See* Am. Compl. ¶ 4. The Trades Council also alleges that notice of its RCRA causes of action was served pursuant to section 6972(b)(2)(A), which provides that no private action brought under the above quoted provision may be commenced prior to ninety days after the plaintiff has given notice of the endangerment unless the action "respect[s] a violation of" the hazardous waste management provisions of RCRA. *See* 42 U.S.C. § 6972(b)(2)(A). On appeal, the Trades Council argues that its first cause of action was exempt from the otherwise applicable ninety-day delay requirement, thereby creating a "hybrid" complaint. The defendants disagree.

As an initial matter, the defendants argue that the Trades Council's first cause of action cannot create a "hybrid" complaint because the first cause of action fails to

state a claim upon which relief can be granted. This argument is without merit.

■ The defendants assert that the first cause of action fails to allege facts "from which it may be inferred that [their] activities actually created the contamination." Krog Br. at 30. But the amended complaint specifically alleges that the "[d]efendants have directly or indirectly caused the discharge, deposit, dumping, spilling, leaking or placement of solid waste . . . onto lands within the . . . Hanna Furnace/Union Ship Canal site." Am. Compl. ¶ 45. The defendants also maintain that the complaint fails to "identify what specific contaminants are being released by [their] activity." Krog Br. at 30. But there is no requirement in section 6972(a)(1)(B) that specific contaminants be named in order to properly state a claim upon which relief can be granted. Finally, the defendants argue that, *inter alia*, "[n]o waste meeting the regulatory definition of . . . hazardous waste has been disposed of or is present at the Site," *id.* at 31, and "there is simply no factual basis to support allegations of 'substantial and imminent danger,'" *id.* at 32. These arguments based on the moving parties' assertions of fact are inapt on a motion to dismiss. We conclude that the Trades Council has adequately alleged a claim upon which relief can be granted in its first cause of action.

That the Trades Council has adequately stated a claim under section 6972(a)(1)(B), however, does not necessarily mean that this claim "respect[s] a violation of subchapter III," 42 U.S.C. § 6972(b)(2)(A), as required in order for the ninety-day notification delay period to be excused. *See id.* Although the amended complaint alleges that the defendants are "owners" and "operators" of a hazardous waste disposal "facility" as those terms are defined by federal regulations applicable to subchapter III, *see* 40 C.F.R. § 260.10, the amended complaint fails to specify any of the provisions of subchapter III itself, 42 U.S.C. §§ 6921–6939e, or to allege explicitly a violation of any of the regulations promulgated thereunder. *Cf. Dague*, 935 F.2d at 1348 (noting that the plaintiffs had informed the defendant of their contention, *inter alia*, that the defendant was "in violation of sections 6925[and] 6930 . . . of RCRA"); *Covington*, 358 F.3d at 637 (noting that the plaintiffs "alleg[ed] a violation of 42 U.S.C. § 6924, . . . a provision within subchapter III of RCRA").

The amended complaint does allege that the defendants have disposed of "hazardous waste" and have released contaminants from "RCRA-regulated hazardous waste management units." Am. Compl. ¶¶ 47–48. The title of subchapter III, as noted, is "Hazardous Waste Management." *See* United States Code, Table of Contents, Title 42, Chapter 82, Subchapter III, 42 U.S.C. §§ 6921–6939e. We think, though, that a plaintiff seeking to take advantage of section 6972(b)(2)(A)'s exception to the otherwise applicable ninety-day notification delay period before filing suit under section 6972(a)(1)(B) must do more than allege generally that "hazardous waste" has been disposed of by a defendant or that the defendant is somehow regulated by RCRA's hazardous waste management provisions. Section 6972(a)(1)(B) allows for suit against "any person . . . who has contributed or who is contributing to the . . . disposal of any solid *or hazardous* waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B) (emphasis added). Section 6972(b)(2)(A) provides that any such suit may not be commenced until at least ninety days have passed after notification is given, "*except* [if] th[e] . . . action . . . respect[s] a violation of subchapter

III." 42 U.S.C. § 6972(b)(2)(A) (emphasis added).

Section 6972 thus appears to require more to excuse statutory delay than that a suit generally involves hazardous waste or hazardous waste management; the action must also be one "respecting a violation" of the provisions of subchapter III or the regulations promulgated thereunder. *See Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 209, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997) ("Statutes must be interpreted, if possible, to give each word some operative effect."); *Dague*, 935 F.2d at 1351 ("When violations of the EPA's permit requirements for hazardous wastes are involved, [C]ongress felt it necessary to carve out exceptions to the delay requirements so that citizen suits could be brought immediately."); *AM Int'l*, 106 F.3d at 1350 (agreeing with a defendant's assertion that only claims involving violations of subchapter III, and not simply those "involving" hazardous waste, "respect[ ] a violation of RCRA's hazardous waste management regulations"); *Cooper v. Armstrong Rubber Co.*, Civ. A. No. J88–0464, 1989 WL 60338, at *7, 1989 U.S. Dist. LEXIS 4099, at *18 (S.D.Miss. Feb. 1, 1989). ("The complaint in this case contains no allegation of specific violations of subchapter III. Rather, plaintiffs charge generally that Armstrong 'used unsafe and improper methods of disposing of both solid and liquid hazardous waste' . . . . This, in the court's view, does not sufficiently allege a violation of subchapter III . . . ."). Even construing the amended complaint in a manner most favorable to the Trades Council, as we must, we can find no such allegation.[11]

11. In supplemental briefing requested by the Court with respect to the first cause of action, the parties agree that a plaintiff that brings suit under 42 U.S.C. § 6972(a)(1)(A) or 42 U.S.C. § 6972(a)(1)(B) must allege a violation of subchapter III in order to be able to file suit immediately after notice of suit is given. The Trades Council acknowledges that its amended complaint fails to identify any of the provisions of subchapter III, 42 U.S.C. §§ 6921–6939e, but contends that the complaint nevertheless alleges violations of subchapter III. We find the Trades Council's argument unpersuasive. It contends that the amended complaint's first cause of action alleges a violation of 40 C.F.R. § 264.94, a regulation promulgated under the authority of RCRA sections 6924 & 6925. *See* Appellant's Letter Br., dated Apr. 13, 2006, at 3–4. The Trades Council concedes, however, that "the Amended Complaint[ ] . . . references standards other than 40 C.F.R. § 264.94." *Id.* at 3. We have difficulty with the argument that the amended complaint alleges a violation of a specific technical regulation that it fails to mention.

In any event, we disagree with the Trades Council's argument that the amended complaint describes violations of 40 C.F.R. § 264.94. It asserts that because the amended complaint alleges that the defendants have discharged contaminants that exceed certain New York State Department of Environmental Conservation "maximum contaminant levels" as defined in 6 NYCRR § 703.6, and those levels are for the named contaminants greater than the maximum concentration limits set forth in 40 C.F.R. § 264.94, "exceedances of the State [regulation] is *ipso facto* exceedance of the federal standards." *Id.* at 4. We disagree. The "maximum contaminant levels" defined in 6 NYCRR § 703.6 are measured from the point at which the contaminants are discharged. *See* 6 NYCRR § 703.6(a); *id.* § 700.1(31). The maximum concentration limits set forth in 40 C.F.R. § 264.94 are measured from an EPA-designated "point of compliance" designed to detect whether the limits are exceeded "in the uppermost aquifer underlying [a] waste management area." 40 C.F.R. § 264.92. Because it thus appears that the state and federal standards are measured differently, the amended complaint's allegations of non-compliance with the state standards alone does not, at least in this context, necessarily describe a violation of 40 C.F.R. § 264.94.

Finally, we note that the federal regulation to which the first cause of action actually cites in describing the allegedly illegal discharges of the defendants, 40 C.F.R. § 257.2, *see* Am.

We conclude that the first cause of action as currently alleged was impermissibly brought immediately after notification in violation of section 6972(b)(2)(A). Because we similarly conclude that the amended complaint's second and third causes of action as currently alleged were impermissibly brought immediately after notification,[12] the amended complaint is not a "hybrid" within the meaning of *Dague*, and it should therefore have been dismissed without prejudice on the ground that the Trades Council brought its action prematurely. *See Hallstrom*, 493 U.S. at 31, 110 S.Ct. 304 ("As a general rule, if an action is barred by the terms of a statute, it must be dismissed.").[13]

■■■ *2. Whether the Trades Council's Notice Was Sufficient.* ECIDA and Krog argue that the notice provided by the Trades Council with respect to its first cause of action, even had the required delay period been followed, was insufficient because it failed to identify any particular RCRA pollutants that had been discharged by the defendants. Because this issue will arise in identical form if the Trades Council seeks to refile a complaint containing this cause of action without first giving new notice to the defendants, and

Compl. ¶ 45, is not promulgated under the authority of subchapter III.

12. In its supplemental letter-brief, the Trades Council argues for the first time that its third cause of action, brought under the Clean Water Act, complied with the pertinent Clean Water Act statutory notification delay period as set forth in 33 U.S.C. § 1365(b). Because the Court did not request supplemental briefing on the third cause of action, and Trades Council failed to raise this argument in its initial or reply briefs, we do not consider it. *See Elec. Inspectors, Inc. v. Vill. of East Hills*, 320 F.3d 110, 123 (2d Cir.2003), *cert. denied*, 540 U.S. 982, 124 S.Ct. 467, 157 L.Ed.2d 373 (2003). The Trades Council has never contended—nor does it appear to be the case— that its second cause of action, alleging a violation of RCRA section 6945, complied with the applicable RCRA statutory notification delay period.

13. The Trades Council has requested that in the event that we conclude that the amended complaint was filed prematurely, it be given leave to amend its amended complaint with respect to its first and second causes of action. But the Supreme Court has made clear that "where a party suing under the citizen suit provisions of RCRA fails to meet the notice and ... delay requirements of § 6972(b), the ... court must dismiss the action." *Hallstrom*, 493 U.S. at 33, 110 S.Ct. 304.

Because our ultimate conclusion—that dismissal without prejudice is thus warranted— is the same as the conclusion reached by the district court, we would normally simply affirm its decision without discussing the grounds reached by the court. But whether or not "we have an independent obligation to address standing issues," *Baur v. Veneman*, 352 F.3d 625, 633 (2d Cir.2003), even as to questions of statutory standing, *see Alliance for Envtl. Renewal v. Pyramid Crossgates Co.*, 436 F.3d 82, 85–86 (2d Cir.2006) (expressing uncertainty as to whether the ordinary rule applies when a federal court may be able to dismiss a case for lack of "statutory standing" if it concludes, apart from the merits of the underlying claim, that a plaintiff has not properly brought suit under the statute at issue); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), because dismissal of the Trades Council's amended complaint is without prejudice, and it appears likely that it will seek to refile, an affirmance or remand without discussion of the jurisdictional issues presented by this appeal might well lead to another appeal of the same issues already briefed at length and argued here. *See Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 203 (2d Cir.1982) ("A remand in these circumstances would merely set the stage for another appeal of the very issue argued here as to the Hotel's compliance with the Florida statute. Therefore, we decide that issue also."). We therefore think it the better course to explain, as we do at some length above, why the district court's decision with respect to jurisdiction was erroneous.

because we think it clear that the defendants' argument is without merit, we choose to address this issue briefly in the interest of expeditious resolution of litigation. *See Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 203 (2d Cir.1982).

In an analogous context, we concluded that notice "must identify with reasonable specificity each pollutant that the defendant is alleged to have discharged unlawfully." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of N.Y.,* 273 F.3d 481, 488 (2d Cir.2001). We reasoned that one of the purposes of notice is to allow a potential "defendant to promptly rectify the problem." *Id.* In that case, in which the plaintiff's letter of notice had stated only that the defendant had discharged certain solid pollutants, we concluded that the requirement had not been met with regard to a subsequent allegation that the defendant had also discharged water at an elevated temperature. *See id.* at 489.

Here, the notice that the Trades Council provided stated that, *inter alia:* (1) "[s]olid waste as defined in 40 C.F.R. § 257.2 has been disposed of on Area 2 and in the Northern Ditches" of the Hanna Furnace site; and, (2) "[g]roundwater contaminants [disposed of at the site] . . . include one or more of . . . chromium, cadmium, cobalt, mercury, lead, arsenic, zinc, silver, nickel, and polycyclic aromatic hydrocarbons . . . ." Notice Of Intent Under Citizen Suit Provisions at 2. We conclude that the content of the notice provided with respect to the first cause of action was sufficient.[14]

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court denying the defendants' motions to dismiss as moot and ordering that this action be dismissed for lack of standing. We remand the case to the district court with instructions that it dismiss the amended complaint without prejudice on the ground that the plaintiff failed to comply with the statutory delay requirements of the Resource Conservation and Recovery Act and the Clean Water Act.

---

14. For the purposes of this appeal, we assume that non-compliance with the pre-suit notice provisions of the Resource Conservation and Recovery Act and the Clean Water Act does not affect a federal court's subject matter jurisdiction. But we do not decide that issue, because we conclude that dismissal of the plaintiff's amended complaint is warranted in any event. We similarly do not decide whether, as the Trades Council contends, we may consider the defendants' objection to the content of notice waived because the defendants failed to raise this argument before the district court. *See Hallstrom,* 493 U.S. at 31, 110 S.Ct. 304 ("[W]e need not determine whether § 6972(b) is jurisdictional in the strict sense of the term."); *id.* at 34 n. 1, 110 S.Ct. 304 (Marshall, J., dissenting) ("I do not understand the Court to express any view on whether the notice requirement is waivable."); *N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co.,* 72 F.3d 830, 834 n. 2 (10th Cir.1996) ("[W]e need not decide the intriguing issue so carefully left open by *Hallstrom*—whether a mandatory precondition to suit is a component of non-waivable 'subject matter jurisdiction.'").